IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| METROPOLITAL FAIR HOUSING COUNCIL OF OKLAHOMA, INC., JAMES MCNAMEE, and MARTA MCNAMEE, | ) ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) Case No. CIV-23-115-GLJ ) |
| FRANK FEIOCK AND GLENNA FEIOCK, both d/b/a Rockford Garden Apartments, | ) ) ) ) |
| Defendants. | ) |

## ORDER

This matter is before the Court on a partial motion for summary judgment as to one claim out of several lodged by Plaintiffs Metropolitan Fair Housing Council of Oklahoma, Inc., James McNamee, and Marta McNamee. Defendants Frank and Glenna Feiock, doing business as Rockford Garden Apartments, move for partial summary judgment as to Plaintiffs' failure-to-accommodate claim under the Federal Fair Housing Act ("FHA"), 42 U.S.C. § 3601 and Oklahoma's Fair Housing Law, 25 Okla. Stat. § 1451 *et seq*. For the reasons set forth below, the Court finds that Defendants Motion for Partial Summary Judgment and Brief in Support [Docket No. 27] is granted.

**I.    PROCEDURAL HISTORY**

Plaintiffs filed their Complaint on April 3, 2023. Docket Nos. 1-2. On December 8, 2023, Defendant moved for partial summary judgment [Docket No. 27] as to Plaintiffs'

1

FHA claim and Oklahoma's identical state law provision, alleging Defendants' failure to accommodate.

Plaintiffs' Complaint allegations focus on the landlord/tenant relationship between Plaintiffs James and Marta McNamee and Defendants Frank and Glenna Feiock. Plaintiffs' Complaint enumerates three claims: (i) "discriminatory housing practices," in violation of the FHA, (ii) "unlawful housing practices" in violation of the Oklahoma Fair Housing Law,[1] 25 Okla. Stat. § 1452, and (iii) a state-law negligence claim "by want of ordinary care of skill in the management of their property[.]" *See* Docket No. 27, pp. 10-11, ¶¶ 37-42. Plaintiffs' Complaint alleges all three claims by all three Plaintiffs against both Defendants, without further clarification. For each, Plaintiffs simply assert that "Defendant" or "Defendants" violated these laws. "At minimum, [R]ule 8(a) requires a comprehensible, 'short and plain' statement of the claim(s) sufficient to give the opposing party reasonable and fair notice of the basis of the complaint." *Abdelsamed v. Colorado*, 6 Fed. Appx. 771, 772 (10th Cir. 2001). Moreover, Plaintiffs' Complaint fails to clearly specify *what* violations they are alleging for each statute and law.[2] A motion to dismiss or for more definite statement, pursuant to Fed. R. Civ. P. 12, would have been well taken here, although the narrower issue before the Court here is not precluded by this failure. The Court proceeds on the substance of the issues related to the partial motion for summary judgment, and is able to do so here because the parties appear to agree that the only claims

---

[1] Plaintiffs identified the statute by two different titles (one correct and one incorrect), but cited the correct statute, in their Complaint. *See* Docket No. 2, p. 11.
[2] For instance, violations of the FHA alone can include, *inter alia*, discrimination, failure-to-accommodate, and retaliation under various provisions.

at issue are Plaintiffs' failure-to-accommodate claims under the FHA and Oklahoma Fair Housing Law.

In any event, Plaintiffs, and perhaps Defendants, appear under the impression that other, separate claims under the FHA, and perhaps Oklahoma statutory and common law, remain. The nature of the remaining claims is unclear to the Court, although the Court notes that Plaintiffs only enumerated one federal claim.[3] *See* Docket No. 2, pp. 10-11, ¶¶ 37-42. Counsel is thus cautioned that the present form of Plaintiffs' Complaint is improper, and each claim should have been clearly and separately set forth to prevent misunderstandings such as this. *See, e.g.*, *Park v. TD Ameritrade Tr. Co.*, 2010 WL 4608225, at *2 (D. Colo. Nov. 5, 2010) ("[A]s a structural matter, the Title VII Complaint is deficient because it purports to assert multiple claims for relief within each 'Claim for Relief.' . . . This format, which is repeated in Claims Three, Four, and Six, is improper under Rule 8 of the Federal Rules of Civil Procedure."). Future failure of this sort could result in dismissal of some or all of a Plaintiff's claims.

## II.   SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if the record shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

---

[3] Ordinarily, the Court would decline to exercise supplemental jurisdiction after all federal claims had been resolved. *See Carlsbad Technology, Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009), ("The district courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction.") (citing 28 U.S.C. § 1367(c)); *Smith v. City of Enid By and Through Enid City Commission*, 149 F.3d 1151, 1156 (10th Cir. 1998) ("When all federal claims have been dismissed, the court may, and usually should, decline to exercise jurisdiction over any remaining state claims.").

Fed. R. Civ. P. 56(a). A genuine issue of material fact exists when "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The moving party must show the absence of a genuine issue of material fact, *see Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986), with the evidence taken in the light most favorable to the non-moving party, *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157 (1970). However, "a party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record . . . or . . . showing that the materials cited do not establish the absence or presence of a genuine dispute[.]" Fed. R. Civ. P. 56(c).

### III.   FACTUAL BACKGROUND

The undisputed facts reflect that Plaintiffs James and Marta McNamee entered into a six-month lease agreement on October 2, 2020, for an apartment unit owned by landlord Frank Feiock. *See* Docket No. 27, p. 2, ¶¶ 1-2 & Ex. 2. Six-month leases were standard for this apartment unit/complex. *Id*. The lease itself required no notice of termination from Defendants; rather, the lease would automatically convert into a month-to-month tenancy at the expiration of the six-month term, identified as March 31, 2021. *Id.*, ¶ 3 & Ex. 2, p. 1. On March 12, 2021, the apartment manager delivered to the McNamees a Notice that the lease would be terminated on April 2, 2021, and that they had thirty days, until May 3, 2021, to vacate the apartment. The Notice was signed by "Frank Feiock, Owner." *Id.*, Ex. 3. Defendants agree, for purposes of this motion, that Plaintiffs are individuals with disabilities under applicable law. *Id.*, p. 4, ¶ 10.

On March 24, 2021, a representative from Plaintiff Metropolitan Fair Housing Council of Oklahoma, Inc. ("MFH") phoned the apartment complex on behalf of Plaintiffs McNamee to make a verbal request to allow the McNamees to stay that the apartment complex.  The apartment manager, Kellie White, memorialized this in an email to Frank Feiock, in which she noted Marta McNamee had represented that James McNamee had stage 4 cancer, was in the end stages of life, and it was "not a good time for them to move." *Id.*, Ex. 4.  Ms. White stated she declined the verbal request because she was "not authorized to make that decision," but that she provided an email address and agreed to relay any request in writing to the Owner.  *Id.*  Defendants interpret the verbal request, and Plaintiffs do not challenge this interpretation, as a request for a six-month renewal of the lease.  *Id.*, p. 3, ¶ 5; Docket No. 35, p. 4, ¶ 5.

That same day, MFH sent a written letter to the apartment complex signed by attorney Ge'Andra Johnson (Plaintiffs' counsel), with "Attention" directed to Frank Feiock as the Owner.  Docket No. 27, Ex. 5.  In it, MFH made a formal request for a "reasonable accommodation" on behalf of the McNamees, stating that James McNamee is covered as a disabled person under the FHA.  In support, MFH cited an unspecified illness in which a move would be "difficult and disruptive, and may worsen or exacerbate his disability."  *Id.*  MFH then requested a lease renewal for a one-year term.  *Id.*  The only formal request was therefore the request for a "one-year double-lease-term renewal request," which Plaintiffs never withdrew or modified.  Docket No. 27, p. 4, ¶ 7.  Plaintiffs vacated the apartment on April 1, 2021.  *Id.*, ¶ 9; Docket No. 35, p. 4, ¶ 9.

Plaintiffs dispute: (i) how to calculate the number of days of notice given by the March 12, 2021 Notice, and (ii) characterizing the events surrounding the termination and/or renewal of the lease term. Defendants allege they provided 52 days of notice to Plaintiffs to vacate, while Plaintiffs allege the March 12, 2021 Notice provided only two days of notice, because Defendants were bound by an April 30, 2021 move-out date since the Notice was provided March 12, 2021 (the lease ended March 31, 2021, and the tenants were legally allowed to stay until April 30, 2021; therefore, a move-out date of May 3 provided only two days' notice, by Plaintiffs' calculations). It is *not* contested, however, that the McNamees received Notice on March 12, 2021 that the lease was being terminated April 2, 2021, and that the Notice gave them until May 3, 2021 to vacate the premises. Additionally, Defendants assert that Plaintiffs never made a request for a lease renewal or extension of the lease, and Defendants were not legally obligated to provide an extension. Plaintiffs contend that they were not required to make such a request because, by the terms of the lease, the tenancy converted to a month-to-month basis upon the expiration of the six-month term. The Court has no facts before it relating to the reason the McNamees' lease was terminated.

## IV.   DEFENDANTS' PARTIAL MOTION FOR SUMMARY JUDGMENT

### A. Defendant Glenna Feiock

Defendants Frank and Glenna Feiock point out in their partial motion for summary judgment that the McNamees' lease agreement was entered solely with Frank Feiock d/b/a Rockford Garden Apartments, and Plaintiffs do not dispute this. *See* Docket No. 27, p. 2, ¶ 1 n.1; Docket No. 35, p. 3, ¶ 1. Furthermore, neither the disputed nor undisputed facts

mention Glenna Feiock in relation to any failure-to-accommodate claim. As Plaintiffs appear to agree, there is no genuine issue of material fact as to Glenna Feiock's involvement, and the Court therefore finds that Defendants' partial motion for summary judgment is granted as of right to Ms. Feiock. The Court declines to opine what, if any, claim(s) remain against Ms. Feiock at this time.

### B. Failure-to-Accommodate.

"The Tenth Circuit has not expounded on the disability portion of a failure to accommodate claim under the Fair Housing Acts[,]" *Haws v. Norman*, 2017 WL 4221064, at *5 (D. Utah Sept. 20, 2017), so district courts in this Circuit have looked to other Circuit Courts for how they have addressed these issues. Under the FHA at 42 U.S.C. § 3604(f)(3)(B),[4] the required elements of a failure-to-accommodate claim "are: (1) plaintiff is handicapped within the meaning of the FHA; (2) defendants knew or reasonably should have known of the plaintiff's claimed disability; (3) plaintiff requested an accommodation of his disability that was necessary to afford him an equal opportunity to use and enjoy the dwelling; (4) the requested accommodation was reasonable; and (5) defendants refused to make the requested accommodation." *Adam v. Andmark White Lakes Apartments, LLC*, 2024 WL 836959, at *6 (D. Kan. Feb. 28, 2024) (citing *Ngiendo v. Univ. Partners, LLC*, 2021 WL 5038780, at *3 (D. Kan. Oct. 27, 2021) (citing *Arnal v. Aspen View Condo. Assoc., Inc.*, 226 F. Supp. 3d 1177, 1183 (D. Colo. 2016) (citing *Dubois v. Ass'n of Apartment Owners of 2987 Kalakaua*, 453 F.3d 1175, 1179 (9th Cir. 2006)).

---

[4] 25 Okla. Stat. § 1452(A)(16)(b) is substantially identical to the language in the FHA. The Court applies the FHA analysis to this state law claim.

"[T]he thrust of a reasonable accommodation claim is that a defendant must make an affirmative change in an otherwise valid law or policy." *Bangerter v. Orem City Corp.*, 46 F.3d 1491, 1501-1502 (10th Cir. 1995). Defendants do not challenge here that the McNamees are handicapped[5] within the meaning of the FHA, nor that Defendants were aware of the disabilities, and Defendants agree they refused to make the requested accommodation. Elements three and four are thus the only two in dispute here, *i.e.*, whether the requested accommodation was necessary *and* reasonable.

"Accommodations required under the Act must be both reasonable and necessary to afford the handicapped individual an equal opportunity to use and enjoy a dwelling." *Groner v. Golden Gate Gardens Apartments*, 250 F.3d 1039, 1044 (6th Cir. 2001) (citing *Smith & Lee Assocs., Inc. v. City of Taylor, Mich.*, 102 F.3d 781, 795-796 (6th Cir. 1996) (holding that the city had violated the Fair Housing Act by failing to allow adult foster care homes to operate in areas zoned for single-family neighborhoods).

Necessary. "The mere fact that a handicapped person makes a request for accommodation does not mean that the accommodation is necessary, and a defendant must be given a reasonable opportunity to review the request for accommodation and determine if the accommodation is necessary under the FHA." *Backus v. Tulsa Greenbriar I, LLC*, 2022 WL 1913006, at *3 (N.D. Okla. June 3, 2022) (citing *Arnal*, 226 F. Supp. 3d at 1186).

---

[5] The preferred term here is "disability," but the Court tracks the statutory language here for consistency purposes. *See, e.g.*, *Storr v. Marik*, 2013 WL 6577374, at *3 n.5 (N.D. Ill. Dec. 10, 2013) ("Although the term 'handicap' has been replaced by the less pejorative term 'individual with a disability' in the Americans with Disabilities Act (42 U.S.C. § 12101 *et seq.*) and other legislation, the 'handicap' label continues in the Fair Housing Act and will be used in this opinion.").

"[T]he object of the statute's necessity requirement is a level playing field in housing for the disabled." *Cinnamon Hills Youth Crisis Ctr., Inc. v. Saint George City*, 685 F.3d 917, 923 (10th Cir. 2012). However, the Tenth Circuit "emphasized" that while "'the [FHA] requires accommodations necessary to ensure the disabled receive the *same* housing opportunities as everybody else, it does not require *more* or *better* opportunities.'" *Courage to Change Ranches Holding Co. v. El Paso Cnty., Colorado*, 73 F.4th 1175, 1205 (10th Cir. 2023) (quoting *Cinnamon Hills*, 685 F.3d at 923). The Tenth Circuit also "explicitly rejected" the proposition that an accommodation is "necessary if it [simply] ameliorates the effects of the disability." *Haws*, 2017 WL 4221064, at *6 (citing *Cinnamon Hills*, 685 F3d at 924) (quotation omitted).

It is undisputed that the requested accommodation, a one-year renewal of the lease, was not available to other nondisabled residents who were only entitled to six-month leases. Plaintiffs also provided no evidentiary support for the necessity of a renewed lease of that length. Plaintiffs do not dispute Defendants' assertion that a standard lease with the Rockford Garden Apartments was for a term of six months. Thus, the McNamees requested an accommodation that was not an equal housing opportunity, but a better one. *See Courage to Change*, 73 F.4th at 1205 ("Soaring Hope did not seek an *equal* housing opportunity to its counterparts, but a *better* opportunity.") (comparing 42 U.S.C. § 3604(f)(3)(B), with *Cinnamon Hills*, 685 F.3d at 923). Additionally, despite Plaintiffs' unsupported assertion that they needed a one-year lease because James McNamee appeared to be at the end stages of his life, Mr. McNamee remains a party to the case to this day (three years later). Indeed, James and Marta McNamee vacated the apartment on April 1,

2021, thirty-two days before their required move-out date. And while there is some evidence that the McNamees were living out of their vehicle following this move, Defendants submitted documents attached to the Reply suggesting Plaintiffs chose this course of action despite being given homelessness support and housing resources, including a hotel option, from the Veteran's Administration. *See* Docket No. 38, Exs. 1-2.[6]   There is thus no evidence that a one-year lease renewal was a necessary accommodation.

    Reasonable. "An accommodation is reasonable under the FHA when it imposes no fundamental alteration in the nature of the program or undue financial or administrative burdens." *Arnal*, 226 F. Supp. 3d at 1185-1186 (citing *Giebeler v. M & B Associates*, 343 F.3d 1143, 1157 (9th Cir. 2003)). However, "Plaintiff cites no authority, and the Court is aware of none, holding that a holdover tenant can remain on a property indefinitely due to a physical handicap." *Ngiendo*, 2021 WL 5038780, at *5 (citing *Salisbury v. City of Santa Monica*, 998 F.3d 852 (9th Cir. 2021) (holding the FHA applies to rentals only when the rental arrangement is supported by adequate consideration)).

    Furthermore, Plaintiffs' response suggests that an "interactive dialogue" for a shorter lease term (30, 60, or 90 days) might have resulted in an earlier resolution of this case. The Court agrees with the District of Colorado that "[t]his seems to concede Plaintiff's written accommodation requests were not reasonable. And the undisputed

---

[6] Defendants submit they were only able to include this documentation in their Reply, citing Plaintiffs delays in providing discovery in this case. *See* Docket Nos. 24, 42. Although not determinative for this decision, the Court cites this evidence here as further support for the lack of necessity here.

material facts do not address any purported accommodation requests Plaintiff made orally." *Criner v. Ppf Amli 10020 Trainstation Circle, LLC*, 2023 WL 6551516, at *16 (D. Colo. Sept. 26, 2023) ("Moreover, the operative inquiry is not Plaintiff's purported flexibility. Rather, '[a]n accommodation is reasonable under the FHA when it imposes no fundamental alteration in the nature of the program or undue financial or administrative burdens.'") (quoting *Arnal*, 226 F. Supp. 3d at 1185-1186 (internal citation omitted)); *see also Keys Youth Servs., Inc. v. City of Olathe, KS*, 248 F.3d 1267, 1276 (10th Cir. 2001) ("Common sense dictates that when a defendant possesses a legitimate nondiscriminatory reason for a housing decision, a plaintiff's requested accommodation must substantially negate the defendant's concern in order to be considered reasonable."). There is thus no evidence that a one-year lease renewal was a reasonable accommodation in this case.

## V.   CONCLUSION

Because the requested accommodation was neither necessary nor reasonable, the Court finds that Defendants Motion for Partial Summary Judgment and Brief in Support [Docket No. 27] is hereby GRANTED. Plaintiffs' claim for failure to accommodate under the FHA and Oklahoma Fair Housing Law are therefore dismissed.

IT IS SO ORDERED this 8th day of April, 2024.

_____
**GERALD L. JACKSON**
**UNITED STATES MAGISTRATE JUDGE**