IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| METROPOLITAN FAIR HOUSING COUNCIL OF OKLAHOMA, INC., JAMES MCNAMEE, and MARTA MCNAMEE,<br><br>Plaintiffs,<br><br>v.<br><br>FRANK FEIOCK AND GLENNA FEIOCK, both d/b/a Rockford Garden Apartments,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) Case No. CIV-23-115-GLJ<br>)<br>)<br>)<br>)<br>)<br>) |

## ORDER

This matter is before the Court on Defendants' second motion for summary judgment as to Plaintiffs' claims in this case. Plaintiffs Metropolitan Fair Housing Council of Oklahoma, Inc., James McNamee, and Marta McNamee sued Defendants Frank and Glenna Feiock, doing business as Rockford Garden Apartments, alleging claims under the Federal Fair Housing Act ("FHA"), 42 U.S.C. § 3601 and Oklahoma's Fair Housing Law, 25 Okla. Stat. § 1451 *et seq.*, as well as an Oklahoma state-law negligence claim. For the reasons set forth below, the Court finds that Defendants['] Second Motion for Summary Judgment and Brief in Support [Docket No. 66] should be GRANTED.

I.     PROCEDURAL HISTORY AND PRELIMINARY ISSUES

Plaintiffs filed their Complaint on April 3, 2023. Docket Nos. 1-2. Plaintiffs' Complaint allegations focus on the landlord/tenant relationship between Plaintiffs James

1

and Marta McNamee and Defendants Frank and Glenna Feiock. Plaintiffs' Complaint alleges three claims by all three Plaintiffs against both Defendants, without further clarification. The sole enumerated federal claim alleges "discriminatory housing practices." Docket No. 2, p. 11, ¶ 38. Defendants moved for partial summary judgment on December 8, 2023, as to a failure-to-accommodate claim under the FHA and Oklahoma Fair Housing Law [Docket No. 27]. Because both parties made substantive arguments on a perceived failure-to-accommodate claim, the Court made a substantive ruling dismissing such a claim despite concerns that such a claim had not even been properly raised in the Complaint. *See* Fed. R. Civ. P. 15 ("When an issue not raised by the pleadings is tried by the parties' express or implied consent, it must be treated in all respects as if raised in the pleadings."). Defendants' motion was granted April 8, 2024, and the failure-to-accommodate claims were dismissed [Docket No, 52]. As part of the Order granting Defendants' motion for partial summary judgment, this Court noted the deficiencies with Plaintiffs' Complaint, telegraphing options available. *See* Docket No. 52, p. 2, ("Plaintiffs' Complaint fails to clearly specify *what* violations they are alleging for each statute and law. A motion to dismiss or for more definite statement, pursuant to Fed. R. Civ. P. 12, would have been well taken here, although the narrower issue before the Court is not precluded by this failure.").

Following the Order granting partial summary judgment, Plaintiffs made no move to amend their Complaint or further define the claims in this case. On June 3, 2024, Defendants moved for leave to file a second motion for summary judgment [Docket 56]. Plaintiffs objected, and their response to the motion also appeared to include a request to

amend their Complaint [Docket No. 62]. The Court granted Defendants' motion by minute order, and by the same minute order denied any request by Plaintiffs to amend as made in violation of this Court's Local Civil Rule 7.1(b), that any pleadings in opposition to a motion, application or objections shall be filed as a separate pleading [Docket No. 63]. Plaintiffs made no separate motion for amendment of the Complaint, and Defendants filed their second motion for summary judgment on June 20, 2024, citing, *inter alia*, Plaintiffs' pleading deficiencies. *See* Docket No. 66, pp. 13-14.

Plaintiffs have failed at every point in this case to properly seek leave to amend their Complaint.[1] After granting partial summary judgment April 8, 2024, the Court subsequently amended the scheduling order dates at the request of the parties [Docket Nos. 52, 55]. For nearly two months, Plaintiffs made no attempt to amend their Complaint,[2] until Defendants moved for leave to file a second summary judgment motion and then Plaintiffs only did so as *part* of their opposition to the request to file a new motion. The Court gave Defendants until June 20, 2024, to file the second motion for summary judgment [Docket Nos. 56, 63]. In other words, Plaintiffs had an additional seventeen days to request to leave to amend after being put on notice of Defendants' plan. During this

---

[1] Plaintiffs appeared to understand the need for an Amended Complaint whey they raised the issue in a response to Defendants' Motion to file a second motion for summary judgment. This Court's denial of any request to the extent the form of the request violated Loc. Civ. R. 7.1(b) ("Each motion, application, or objection filed shall be a separate pleading except where alternative pleading is allowed by law or these Rules. . . . Any pleading in opposition to a motion, application, or objection shall be filed as a separate pleading."), was made without prejudice to being properly raised as a separate motion and in accordance with Federal and local rules.

[2] Even though the deadline for filing Amended Pleadings had previously passed and was not extended, the Federal Rules of Civil Procedure allow parties to request leave to amend after such deadlines for good cause with the judge's consent. Fed. R. Civ. P. 15(b)(4).

time, Plaintiffs sought and were given a two-week extension of time to file their own summary judgment motion, and then another three-day extension of time [Docket Nos. 60-61, 69-70]. On that final deadline, Plaintiffs submitted notice to the Court that they would not file a summary judgment motion after all [Docket No. 71]. Plaintiffs also sought and were given an extension of time to respond to Defendants' second summary judgment motion, and the response was filed at 11:59 p.m. on the deadline [Docket Nos. 72-74].[3] Despite filing four motions during this time and a substantive response brief, Plaintiffs made no attempt to amend.

Plaintiffs state that their Response brief is an attempt to "more clearly allege the claims pending," Docket No. 79, p. 31, not to amend, but the Response clearly addresses claims not heretofore discussed. Plaintiffs assert alternatively that amendment in a summary judgment response is permissible but even the case they cited in support of this argument denied the amendment of the Complaint through that mechanism. *Viernow v. Euripides Dev. Corp.*, 157 F.3d 785, 800 (10th Cir. 1998) ("Further, although Viernow now claims that he did not include federal claims under the Securities and Exchange Act in his original state court petition because such claims provide for exclusive federal jurisdiction, he had approximately eighteen months in which to include such claims after

---

[3] Plaintiffs' counsel encountered technological difficulties at the time of uploading the Response, such that no exhibits were attached. The following morning, they moved to supplement the Response with the Exhibits [Docket No. 75]. The Court granted the motion, with further instructions that the Response Brief was to be brought into compliance with Loc. Civ. R. 7.1(c), including an indexed table of contents showing headings or subheadings and an indexed table of statutes, rules, ordinances, cases, and other authorities cited [Docket No. 77]. Plaintiffs filed a compliant Response two days later [Docket No. 79].

4

the case was removed to federal court. We find no justification for his failure to do so, and we do not favor permitting a party to attempt to salvage a lost case by untimely suggestion of new theories of recovery, especially after the trial judge has already expressed adverse rulings."). Given the differences between the arguments propounded by Defendants and Plaintiffs' Response, the Response must be construed as not just clarification of their claims but an attempt to amend the Complaint.

"[T]he court may deny a motion to amend under Fed. R. Civ. P. 15(a)(2) on 'a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment.'" *Everest Indem. Ins. Co. v. Jake's Fireworks, Inc.*, 2020 WL 3892959, at *3 (D. Kan. July 10, 2020) (quoting *Wilkerson v. Shinseki*, 606 F.3d 1256, 1267 (10th Cir. 2010) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962) (same)). Plaintiffs were placed on notice of the deficiencies of their Complaint in April 2024, including lack of clarity regarding what remained after one federal claim for relief had been dismissed where the Complaint alleged one federal cause of action. Despite having months and numerous opportunities to properly request leave to amend, Plaintiffs allege in their Response that they were uncertain whether they could so after the deadline. The Court first looks to Fed. R. Civ. P. 15, which clearly states, even after a deadline for amendment has passed, "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." While Rule 15(b)(4) grants that a "schedule may be modified only for good cause and with the judge's consent[,]" nothing about this Court's previous order (indicating a need for amendment or

a more definite statement) foreclosed the possibility of amendment based on good cause. The Court nevertheless declines to grant leave to amend at this juncture, because the case was filed over sixteen months ago and Plaintiffs have been on notice of the deficiencies in their Complaint for, at a minimum, over four months at the writing of this Order yet have failed to properly request leave to amend. *Martinez v. Santa Fe Civic Hous. Auth., Inc.*, 2003 WL 27385029, at *2 (D.N.M. July 10, 2003) ("As Defendants filed their motion for summary judgment based upon the nature of the claims as articulated in the existing complaint, it would be unjust to allow Plaintiff to redefine those claims at this juncture and in this procedurally defective manner. Therefore, the Court will consider Plaintiff's claims as defined by her existing complaint for purposes of these motions."); *Alexander v. USAA Cas. Ins. Co.*, 2022 WL 4970052, at *4 (D. Colo. Oct. 4, 2022) ("A party may not amend her pleading in a response to a motion for summary judgment.") (citing *Martinez*, 2003 WL 27385029, at *2). *Cf. Schneider v. Citimortgage, Inc.*, 2016 WL 344725, at *5 (D. Kan. Jan. 28, 2016) ("[T]he Schneiders never sought an extension of the deadline and waited at least two months after discovering the alleged fraud to file a motion for leave to amend. The court finds that the Schneiders have not shown good cause to extend the scheduling order under Rule 16(b)(4) and their motion for leave to amend the complaint is therefore denied as untimely."). The Court also notes Plaintiffs are not proceeding pro se but are represented by licensed counsel charged with knowledge of the Federal and local rules and procedures. *See Bobelu-Boone v. Wilkie*, 526 F. Supp. 3d 971, 985 (D.N.M. 2021) ("First, the complaint in this case was drafted by Plaintiff's counsel and so it is afforded no leniency in construction as it would be if Plaintiff were proceeding *pro se*. The

*Iqbal-Twombly* standard should be familiar enough by now to attorneys who file civil rights cases in federal court. . . . Second, counsel's offhand request does not comply with this Court's local rules requiring a *motion* to amend a pleading as well as a proposed amendment to the pleading.") (citing, *inter alia*, *Beedle v. Wilson*, 422 F.3d 1059, 1063 (10th Cir. 2005) (holding *pro se* pleadings to "less stringent standards than formal pleadings drafted by lawyers."); *see also* Loc. Civ. R. 7.1(k) ("Motion to Amend Pleadings.").

The original Complaint therefore governs this case.  As relevant, one heading of Plaintiffs' Complaint in the "Factual Allegations" section states, "Frank and Glenna Feiock Deny the Plaintiffs' Requests for Reasonable Accommodation; and Retaliate Against All Plaintiffs," *id*, p. 6, and Plaintiffs use the phrase "harassing conduct," *id*, p. 8, ¶ 26, to describe Defendants' conduct.  Plaintiffs' Complaint enumerates three claims: (i) "discriminatory housing practices," in violation of the FHA, (ii) "unlawful housing practices" in violation of the Oklahoma Fair Housing Law,[4] 25 Okla. Stat. § 1452, and (iii) a state-law negligence claim "by want of ordinary care of skill in the management of their property[.]"  *See* Docket No. 27, pp. 10-11, ¶¶ 37-42.

Defendants move for summary judgment as to all remaining claims in this case.[5] Specifically, Defendants contend Glenna Feiock is not a proper party, the one identified

---

[4] Plaintiffs identified the statute by two different titles (one correct and one incorrect), but cited the correct statute, in their Complaint.  *See* Docket No. 2, p. 11.
[5] Defendants' motion fails to comply with Loc. Civ. R. 7.1(c) ("Briefs exceeding fifteen (15) pages in length shall be accompanied by an indexed table of contents showing headings or subheadings and an indexed table of statutes, rules, ordinances, cases, and other authorities cited.").

7

federal claim has been dismissed, supplemental jurisdiction for any remaining claims should be denied, and Plaintiffs' harassment claim fails on the merits. Defendants take the position that this Court's previous order granting partial summary judgment found that Plaintiffs had only raised one claim for relief under the Fair Housing Act, *i.e.*, failure to accommodate. On the contrary, this Court found Plaintiffs' Complaint deficient under Fed. R. Civ. P. 8(a) and could not discern what FHA claim or claims Plaintiffs were raising, noting only one was enumerated; nevertheless, the Court addressed a failure-to-accommodate claim because the parties appeared to agree it had been raised and made substantive arguments regarding it. Fed. R. Civ. P. 15. Defendants alternatively argue that Plaintiffs' FHA claim of harassment should fail. Defendants do not address substantive issues related to any state law claim.

Plaintiffs contend, *inter alia*, that (i) Defendant Glenna Feiock is vicariously liable in this case, and (ii) that FHA claims for hostile environment, *i.e.*, harassment, based on disability, perceived disability, or record of disability,[6] and retaliation, as well as a state law claim for (iii) negligence, should remain for jury trial. Plaintiff's arguments as to vicarious liability, harassment, and retaliation are new and appear to be attempts at amending the Complaint. The Complaint itself does not even reference "vicarious

---

[6] Plaintiff's Response contains citations and arguments to the permissibility of FHA claims based on racial harassment, rather than disability. *See* Docket No. 79, p. 22. Neither the Complaint nor the Second Motion for Summary Judgment and subsequent briefing references the race of any party in this case. If Plaintiffs are attempting to use their Response as a vehicle for asserting a claim of race-based discrimination in violation of the FHA, such attempt fails. To facilitate resolution of the issues in this case, the Court instead recognizes that the FHA prohibits discrimination of a disability or perceived disability, as is alleged broadly in Plaintiffs' Complaint and elsewhere in their briefing practice.

liability," and makes only vague references to harassment and retaliation as part of a factual background. While detailed factual allegations are not required, the statement of the claim under Rule 8(a)(2) must be "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*citing Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)); *see generally* Fed. R. Civ. P. 8(a)(2) (complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]"). Plaintiffs do not meet the standard here.

Having denied Plaintiffs' improper requests to amend, the Court finds that claims related to *vicarious liability* or *retaliation* must therefore be denied at this time because they were first raised in the response brief. "The Court should not ordinarily consider a claim raised for the first time in a response brief." *Roberts v. Jones*, 2012 WL 1072218, at *1 n.1 (W.D. Okla. Feb. 29, 2012) (citing, *inter alia, Lawmaster v. Ward*, 125 F.3d 1341, 1346 n.2 (10th Cir. 1997) ("Because Mr. Lawmaster failed to raise the [claim], we refuse to consider it."), *and Fuqua v. Lindsey Management Co., Inc.*, 321 Fed. Appx. 732, 735 (10th Cir. 2009) (affirming the refusal to consider a new claim in a response brief as a potential amendment when the plaintiff failed to seek leave for an amendment or to provide notice of a request for further amendment)); *see also Miller v. Cleveland County*, 2011 WL 2634190, at *4 (W.D. Okla. July 5, 2011) ("It is not until Plaintiff's response brief that he attempts to flesh out a claim for retaliation. However, Plaintiff has to date not requested leave to amend his Complaint. Accordingly, the Court declines to consider the retaliation claim on its merits."). "It was incumbent upon [Plaintiffs] to know whether its pleadings adequately raised the pertinent issues." *Everest Indem.*, 2020 WL 3892959, at *3. Because

Plaintiffs unduly delayed amending their Complaint after notice from the Court, amendment at this stage would prejudice Defendants and is denied, given that a *second* summary judgment is ripe for resolution and any amendment for complete briefing on the issues would result in additional delays.  *Id.* ("[A]llowing an amendment complicates the summary judgment record and essentially amounts to a do-over for Jake's on the issue of waiver, thereby prejudicing Everest.").

Because both parties appear to address the harassment issue by implied consent,[7] *see* Fed. R. Civ. P. 15(b), the Court addresses the substance of that claim in the analysis below.  In sum, Plaintiffs' attempt to amend the Complaint is denied, Defendants' motion for summary judgment should be granted on Plaintiffs' putative FHA claim of harassment, and the Court will decline supplemental jurisdiction for any and all remaining state law claims.

---

[7] Defendants' Second Motion for Summary Judgment [Docket No. 66] and Reply [Docket No. 81] are themselves difficult to follow and parse.  Defendants' Second Motion contains approximately three and one-half pages of argument, while the remaining twelve pages contain their statement of undisputed facts.  Defendants' Reply, which violates Loc. Civ. R. 7.1(e) ("Reply and supplemental briefs shall be limited to ten (10) pages in length unless otherwise authorized by the Court."), enumerates responses to Plaintiffs' additional facts, often without references to the record in this case.  Furthermore, the Reply contains no additional argument in its eleven pages, other than asides such as "And what did Defendants do in response to Metro's legally unsupportable demands and threats?  Defendants did not grab a pitchfork and pound on Metro's door, forcing their way in, and menacing its employees and staff. . . . Defendants responded to Metro's legally unsupported demands, threats of government involvement and of litigation, stonewalling, and refusal to communicate with tippy-taps on Mr. Feick's keyboard." Docket No. 81, p. 10, ¶ 52.  Nevertheless, while it is clear the Complaint does not allege, nor do Defendants appear to address, a retaliation claim or vicarious liability under the FHA, Defendants do argue against a harassment claim.

## II.    SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if the record shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A genuine issue of material fact exists when "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  The moving party must show the absence of a genuine issue of material fact, *see Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986), with the evidence taken in the light most favorable to the non-moving party, *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157 (1970).  However, "a party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record . . . or . . . showing that the materials cited do not establish the absence or presence of a genuine dispute[.]" Fed. R. Civ. P. 56(c).

## III.   FACTUAL BACKGROUND

This case is based on a landlord/tenant dispute.[8]  Plaintiffs James and Marta McNamee entered into a six-month lease agreement with landlord Frank Feiock on October 2, 2020, for an apartment unit at Rockford Garden Apartments.  Defendant(s) or a representative notified Plaintiffs they were terminating the lease at the end of the six-month rental period.  Plaintiffs allege they are both individuals with disabilities under applicable law.

---

[8] This factual background is adapted from this Court's previous Order, Docket No. 52, pp. 4-6, and from the facts as presented by the parties in the Second Motion for Summary Judgment, Docket No. 66, and Plaintiffs' Response, Docket No. 79.

On March 24, 2021, a representative from Plaintiff Metropolitan Fair Housing Council of Oklahoma, Inc. ("MFH") phoned the apartment complex on behalf of Plaintiffs McNamee to make a verbal request to allow the McNamees to stay at the apartment complex. The apartment manager, Kellie White, memorialized this in an email, stating she declined the verbal request because she was "not authorized to make that decision," but that she provided an email address and agreed to relay any request in writing to the Owner.

That same day, MFH sent a written letter to the apartment complex signed by attorney Ge'Andra Johnson (Plaintiffs' counsel), with "Attention" directed to Frank Feiock as the Owner. In it, MFH made a formal request for a "reasonable accommodation" on behalf of the McNamees, stating that James McNamee is covered as a disabled person under the FHA and requesting a lease renewal for a one-year term. In response to a telephone call to the apartment complex property manager, Frank Feiock emailed MFH and asked them to withdraw their request for accommodation. Frank Feiock then sent a letter critical of MFH. Plaintiffs McNamee vacated the apartment on April 1, 2021. On the day Plaintiffs McNamee were moving out of the apartment, Frank Feiock approached James McNamee to ask about a purported cancer diagnosis, and also took photographs of him as he was carrying items. Frank Feiock also contacted the Department of Housing and Urban Development ("HUD"), as well as the Oklahoma Bar Association, to complain about MFH and file a formal grievance as to Plaintiffs' counsel. He sent at least three more emails to MFH over eight days, in which he complained, *inter alia*, of receiving no response to previous communications. One of those emails was sent under a pseudonym, "Jack Cory," in which he asked for Plaintiffs' counsel's direct email address because he

believed she had discriminated against him, was biased, and had sent him a letter in which she threatened to either file a HUD complaint or a civil lawsuit.

## IV.   DEFENDANTS' SECOND MOTION FOR SUMMARY JUDGMENT

### A. Harassment/Hostile Housing Environment - FHA.

The FHA's stated purpose is "to provide, within constitutional limitations, for fair housing throughout the United States." 42 U.S.C. § 3601.  Under 42 U.S.C. § 3617, it is "unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed" his or her rights under the FHA. "The test for sufficiency of a claim under Section 3617 requires the complaint to allege that (1) plaintiff is a member of a protected class under the Fair Housing Act; (2) she exercised or enjoyed a right protected by §§ 3603–3606, (3) defendants' conduct was at least in part intentional discrimination; and (4) defendants' conduct constituted coercion, intimidation, threat or interference on account of having exercised a right protected under §§ 3603-3606." *Zhu v. Fisher, Cavanaugh, Smith & Lemon, P.A.*, 151 F. Supp. 2d 1254, 1259 (D. Kan. 2001) (citations omitted).

Defendants' second summary judgment motion now construes Plaintiffs' Complaint as alleging an FHA harassment claim by Plaintiff MFH alone.  Defendants contend that their actions were responses to MFH's demands for accommodation, and that Defendants made no threats and MFH did not allege Defendants harassed them in person.  Moreover, Defendants note that Plaintiffs' claim is based on the accommodation demand, asserting this Court's previous ruling to establish that the accommodation request was neither

13

necessary nor reasonable. Plaintiffs' Response alleges harassment from Defendants that was applied to Plaintiffs James and Marta McNamee as well as Plaintiff MFH.

<u>Metropolitan Fair Housing Council of Oklahoma, Inc. (MFH)</u>. "An organization has standing to sue on its own to challenge action that causes it direct injury, and the inquiry is **'the same inquiry as in the case of an individual.'** Organizations may assert standing in their own right when, for instance, a defendant's conduct makes it difficult or impossible for the organization to fulfill one of its essential purposes or goals, such as when the organization faces a drain on its resources or when the defendant's actions 'have percepti[bly] impaired' the organization's ability to carry out its mission." *Bradford v. U.S. Dep't of Lab.*, 582 F. Supp. 3d 819, 832 (D. Colo. 2022), *affirmed* 101 F.4th 707 (10th Cir. 2024) (quoting *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 378-379 (1982) ("[C]oncrete and demonstrable injury to the organization's activities—with the consequent drain on the organization's resources—constitutes far more than simply a setback to the organization's abstract social interests[.]"). Plaintiffs assert MFH has standing to bring claims under the FHA but makes no argument how they have established standing here. Plaintiffs further make no arguments as to the harassing conduct underlying any such claim and make no mention that the interactions with Defendants in any way drained their resources or negatively affected their ability to carry out the mission of the organization. Simply because a fair housing organization *can* establish standing under the FHA does not mean that Plaintiff MFH has done so here. Plaintiffs' claim of harassment as to MFH is dismissed.

James and Marta McNamee. Plaintiffs James and Marta McNamee contend Defendant Frank Feiock denied their request for accommodation, then engaged in harassment when he approached them to ask James McNamee the nature of his disability while also surveilling him by taking photographs as the McNamees moved out of their Rockford Garden apartment. The McNamees contend these actions were intimidating, and were close in time to their denial of request for accommodation, thus severe enough to constitute a hostile environment harassment claim.

For a claim of hostile housing environment based on *race*,[9] the Tenth Circuit looks "to decisions addressing hostile work environment claims for guidance. To make out a hostile work environment case, a plaintiff must prove (1) she is a member of a protected group, (2) she was subject to unwelcome harassment, (3) the harassment was based on her membership in the protected class, and (4) the harassment was so severe, pervasive, or abusive that it altered the conditions of employment. 'Applied to housing, a claim is actionable when the offensive behavior unreasonably interferes with use and enjoyment of the premises.' Trivial or isolated manifestations of a discriminatory environment are not actionable. Rather, harassing conduct must be severe or pervasive." *Jackson v. Park Place Condominiums Ass'n, Inc.*, 619 Fed. Appx. 699, 703 (10th Cir. 2015) (quoting *Honce v.*

---

[9] The Tenth Circuit has not applied a hostile housing environment claim based on disability discrimination, although one might be applicable under 42 U.S.C. § 3604(f) ([It shall be unlawful--] [t]o discriminate in the sale or rental, or to otherwise make unavailable or deny, a dwelling to any buyer or renter because of a handicap [or] To discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of a handicap[.]"); *see also* 24 C.F.R. §100.600 (defining hostile environment harassment in housing, including harassment based on handicap).

*Vigil,* 1 F.3d 1085, 1090 (10th Cir.1993)) (citations omitted). "Situations which may reasonably give rise to wounded feelings will not on that account be considered severe or pervasive." *Ngiendo v. Pep-KU, LLC*, 2019 WL 3430570, at *4 (D. Kan. July 30, 2019) (citing *Morris v. City of Colorado Springs*, 666 F.3d 654, 664 (10th Cir. 2012). This requires an analysis of the totality of the circumstances, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with [the use and enjoyment of the premises]." *Jackson v*, 619 Fed. Appx. at 704 (quotation omitted).

Plaintiffs McNamee appear to identify James McNamee's alleged disability as relevant to this claim, although in other places they reference an alleged disability related to Marta McNamee. Plaintiffs allege only that the timing of the incidents provides merit to the claim, but they do not allege or provide evidence that the Defendant Frank Feiock's alleged actions were severe or pervasive. While a single incident may constitute a discriminatory housing practice, 24 C.F.R. § 100.600(c) ("A single incident of harassment because of . . . handicap may constitute a discriminatory housing practice, where the incident is sufficiently severe to create a hostile environment[.]"), the incident described here is not sufficiently severe. Indeed, the photographs were taking while Plaintiffs were moving out of the residence; there are no allegations of further interaction between these parties. While tense conversations and being photographed in public areas might not be preferable, they do not rise to the level of unlawful harassment. Nor can Plaintiffs demonstrate that the alleged harassment altered the conditions of their housing, because Defendants had already declined to renew the lease. *See, e.g.*, *Morris v. City of Colo.*

*Springs,* 666 F.3d 654, 665-669 (10th Cir. 2012) (holding three isolated incidents combined with allegations that a supervisor yelled at the plaintiff about the quality of her work, without context for the comments, did not establish a hostile work environment); *Penry v. Fed. Home Loan Bank of Topeka,* 155 F.3d 1257, 1262-1263 (10th Cir. 1998) (holding that summary judgment in favor of the defendant was properly granted on a hostile work environment claim where a plaintiff complained of isolated incidents that occurred over a four-year period, most of which did not occur because of her sex); *Ellis v. CCA of Tenn. LLC,* 650 F.3d 640, 648-649 (7th Cir. 2011) (holding three isolated incidents that were not "extremely serious" did not support a hostile work environment claim). Accordingly, Defendant Frank Feiock is entitled to summary judgment on this claim.

### B.  State Law Claims

"A district court's decision whether to exercise [supplemental] jurisdiction after dismissing every claim over which it had original jurisdiction is purely discretionary." *Carlsbad Technology, Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) ("The district courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction.") (citing 28 U.S.C. § 1367(c)). The federal claim in this case that is the basis for original subject matter jurisdiction is dismissed, there are no exceptional circumstances or compelling reasons to support exercising jurisdiction over the state law claim, and it is not entirely clear the nature of Plaintiffs' state law claims. Therefore, the Court declines to exercise supplemental jurisdiction over any remaining state law claims. *See Smith v. City of Enid By and Through Enid City Commission*, 149 F.3d 1151, 1156 (10th Cir. 1998) ("When all federal claims

have been dismissed, the court may, and usually should, decline to exercise jurisdiction over any remaining state claims."). Inasmuch as this case has not been removed from an Oklahoma State Court, however, this Court lacks the ability to remand it to a state court. As such, the Court finds that the remaining state law claim is hereby dismissed without prejudice.

## CONCLUSION

Accordingly, Defendants['] Second Motion for Summary Judgment and Brief in Support [Docket No. 66] is hereby GRANTED, and this case is DISMISSED WITHOUT PREJUDICE.

IT IS SO ORDERED this 7th day of August, 2024.

_____
**GERALD L. JACKSON**
**UNITED STATES MAGISTRATE JUDGE**