IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| METROPOLITAN FAIR HOUSING COUNCIL OF OKLAHOMA, INC., JAMES MCNAMEE, and MARTA MCNAMEE, <br><br> Plaintiffs, <br><br> v. <br><br> FRANK FEIOCK AND GLENNA FEIOCK, both d/b/a Rockford Garden Apartments, <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) Case No. CIV-23-115-GLJ ) ) ) ) ) ) ) |

## ORDER

This matter is before the Court on Defendants' motion for attorneys' fees pursuant to Fed. R. Civ. P. 54 and LCvR 54.2. For the reasons set forth below, the Court finds that Defendants' Motion for the Recovery of Legal Fees and Brief in Support [Docket No. 85] is GRANTED IN PART and DENIED IN PART.

### Background

Plaintiffs Metropolitan Fair Housing Council of Oklahoma, Inc., James McNamee, and Marta McNamee sued Defendants Frank and Glenna Feiock, doing business as Rockford Garden Apartments, alleging claims under the Federal Fair Housing Act ("FHA"), 42 U.S.C. § 3601 and Oklahoma's Fair Housing Law, 25 Okla. Stat. § 1451 *et seq.*, as well as an Oklahoma state-law negligence claim. *See* Docket No. 2. Plaintiffs'

1

Complaint allegations focused on the landlord/tenant relationship between Plaintiffs James and Marta McNamee and Defendants Frank and Glenna Feiock.

On December 8, 2023, Defendants moved for partial summary judgment as to a failure-to-accommodate claim under the FHA and Oklahoma Fair Housing Law. *See* Docket No. 27. Because both parties made substantive arguments on a perceived failure-to-accommodate claim, the Court made a substantive ruling dismissing such a claim despite concerns that such a claim had not even been properly raised in the Complaint. *See* Docket No. 52. On April 8, 2024, Defendants' motion was granted and the failure to accommodate claims were dismissed. *Id*.

On June 3, 2024, Defendants moved for leave to file a second motion for summary judgment. *See* Docket No. 56. The Court granted Defendants' motion. *See* Docket No. 63. Defendants['] Second Motion for Summary Judgment and Brief in Support sought judgement as to all remaining claims in this case, specifically contending that Glenna Feiock is not a proper party, the one identified federal claim had been dismissed, supplemental jurisdiction for any remaining claims should be denied, and Plaintiffs' harassment claim fails on the merits. *See* Docket No. 66. On August 7, 2024, the Court granted Defendants' second summary judgement motion and entered Judgment for Defendants and against Plaintiffs. *See* Docket Nos. 82 & 83.

## Analysis

I.    **Entitlement to Attorneys' Fees**

Defendants seek the award of $58,807.40 in attorneys' fees as the prevailing party in this action. *See* Docket No. 85. Under the "American Rule," a litigant generally pays

his or her own attorney's fees unless a statute or contract provides otherwise. *Baker Botts L.L.P. v. ASARCO LLC*, 576 U.S. 121, 126 (2015); *Tyler v. U.S. Dept. of Educ. Rehab. Serv. Admin.*, 904 F.3d 1167, 1193 (10th Cir. 2018).  The FHA provides such as it authorizes the Court to grant attorney's fees and costs to the prevailing party. 42 U.S.C. § 3613(c)(2).  Under the FHA and other civil rights acts, "[a]lthough fees are regularly awarded to prevailing plaintiffs who obtain some significant measure of relief, they are not routinely awarded to prevailing defendants 'unless a court finds that his claim was frivolous, unreasonable, or groundless, or that the plaintiff continued to litigate after it clearly became so.'" *Ghazal v. Whinery*, 2020 WL 5017766, at *1 (N.D. Okla. Aug. 25, 2020) (quoting *Christiansburg Garment Co. v. Equal Employment Opportunity Comm'n*, 434 U.S. 412, 422 (1978)). As such, awarding fees to prevailing defendants under such circumstances "protect[s] defendants from burdensome litigation having no legal or factual basis." *Christiansburg Garment*, 434 U.S. at 420.  Nonetheless, the standard for awarding attorney's fees to a defendant "is a difficult standard to meet, to the point that rarely will a case be sufficiently frivolous to justify imposing attorney fees on the plaintiff." *Ghazal*, 2020 WL 5017766, at *1  (quoting *U.S. ex rel. Grynberg v. Praxair, Inc.*, 389 F.3d 1038, 1059 (10th Cir. 2004)).  The party seeking attorneys' fees has the burden of proving they are entitled to the requested fees. *Case v. Unified Sch. Dist. No. 233, Johnson Cnty., Kan.*, 157 F.3d 1243, 1250 (10th Cir. 1998).

"A frivolous suit is one that 'lacks an arguable basis either in law or in fact.'" *Hatfield v. Cottages on 78th Community  Ass'n*, 2021 WL 2379624, at *2 (D. Utah June 10, 2021) (quoting *Neitzke v. Williams*, 490 U.S. 319, 325 (1989)).  As previously noted, this

3

standard is difficult to satisfy and "rarely will a case be sufficiently frivolous to justify imposing attorney fees on the plaintiff." *Grynberg*, 389 F.3d at 1059. In determining whether plaintiffs' claims are vexatious or groundless, the Court must review the entire course of the litigation. *Christiansburg Garment*, 434 U.S. at 421-22. The Court must also keep in mind that "[t]he plaintiff's action must be meritless in the sense that it is groundless or without foundation. The fact that a plaintiff may ultimately lose his case is not in itself sufficient justification for the assessment of fees. . . ." *Houston v. Norton*, 215 F.3d 1172, 1174 (10th Cir. 2000). Nonetheless, courts have awarded attorney's fees where an FHA complaint was devoid of factual allegations that defendant engaged in any discriminatory conduct, *Barrow v. Barrow*, 2017 WL 2953636, at *4 (D. Mass. July 10, 2017), plaintiffs asserted unreasonable and baseless facts, *Dorval v. Sapphire Vill. Condo. Owners Ass'n*, 2020 WL 2487559, at *2 (D.V.I. May 14, 2020), and claims were based on unreasonable interpretations of the evidence. *Thorpe v. Ancell*, 2006 WL 2406240, at *2–5 (D. Colo. Aug. 18, 2006), *aff'd*, 367 F. App'x 914 (10th Cir. 2010).

Defendants assert that Plaintiffs' claims were vexatious and groundless because the Court dismissed all their FHA and Oklahoma Fair Housing Law claims, leaving only their state law negligence claim. *See* Docket No. 85, p. 6. In particularly, Defendants rely on the Court's conclusion that Plaintiffs' "requested accommodation was neither necessary nor reasonable" and Plaintiffs "also provided no evidentiary support for the necessity of a renewed lease of that length." *Id.* at p. 3. Defendants further rely on the Court's conclusion on their second motion for summary judgment that there were deficiencies with Plaintiffs' Complaint for which they failed to properly seek leave to amend. *Id*. at p. 4. In response,

4

Plaintiffs concede that their failure to amend was "a costly procedural blunder," but they do not believe that renders the action meritless. *See* Docket No. 87, p. 3. Plaintiffs further argue that although their claims may not have been well articulated, both Defendants and Plaintiffs agreed upon the claims being asserted in both of Defendants' motions for summary judgment. *Id.*[1]

### 1. Plaintiffs' Failure to Accommodate Claim

In the Court's April 8, 2024 Order on Defendants' Motion for Partial Summary Judgment and Brief in Support, the Court noted the following, *inter alia*, undisputed facts: Plaintiffs James and Marta McNamee entered into a six-month lease agreement on October 2, 2020, for an apartment unit owned by landlord Frank Feiock; six-month leases were standard for this apartment unit/complex; the lease required no notice of termination from Defendants, but instead would automatically convert into a month-to-month tenancy at the expiration of the six-month term, identified as March 31, 2021; on March 12, 2021, the apartment manager delivered to the McNamees a Notice that the lease would terminate on April 2, 2021, and that they had thirty days, until May 3, 2021, to vacate the apartment; Defendants agreed, for purposes of the motion, that Plaintiffs are individuals with disabilities under applicable law; on March 24, 2021, a representative from Plaintiff Metropolitan Fair Housing Council of Oklahoma, Inc. ("MFH") phoned the apartment complex on behalf of the McNamees to make a verbal request to allow them to stay at the

---

[1] Both parties spend significant portions of their briefing arguing over whose litigation conduct contributed to the increased time and expense of the lawsuit. Such arguments, however, go to the reasonableness of any attorneys' fees requested, not the entitlement to such fees.

apartment complex; the apartment manager declined the verbal request because she was not authorized to make that decision, but she provided an email address and agreed to relay any request in writing to the owner; that same day, MFH sent a written letter to the apartment complex owner making a formal request for a lease renewal for a one-year term as a "reasonable accommodation" on behalf of the McNamees; and the McNamees vacated the apartment on April 1, 2021. *See* Docket No. 52, pp 4-5.

Although the Court noted that the Complaint failed to comply with Fed. R. Civ. P. 8(a), the parties themselves nonetheless agreed that the only claim at issue in the partial motion for summary judgement was Plaintiffs' failure-to-accommodate claim under the FHA and the Oklahoma Fair Housing Law.[2] *Id.*, pp. 2-3. With that understanding, the Court held that Plaintiffs' request for a one-year lease renewal was neither necessary nor reasonable under the FHA. *Id.*, pp. 8-11. Specifically, the Court concluded that a one-year lease renewal was not necessary because it was not available to other nondisabled residents who were only entitled to a six-month renewal and the lease renewal was not reasonable because Plaintiffs cited no authority supporting the conclusion that a holdover tenant can remain on a property indefinitely due to a physical disability. *Id*.

While the hurdle for a successful defendant in a FHA case to be awarded fees is high, it is not insurmountable. Plaintiffs never put forward a plausible set of facts that could support their failure-to-accommodate claim. The Complaint was devoid of any

---

[2] Nowhere in Defendants' Motion for the Recovery of Legal Fees or elsewhere do Defendants explain their procedural choice of filing a partial motion for summary judgement well before the dispositive motion deadline while ignoring the glaring underlying deficiencies of the Complaint.

plausible allegation that Plaintiffs requested a reasonable and necessary accommodation under any FHA precedent. This is particularly troubling given that MFH, which was both a party and counsel for itself and the McNamees, claims to have extensive knowledge and expertise in investigating and preventing housing discrimination. *See* Docket No. 2, ¶ 5. As a result, the Court finds that Plaintiffs' failure to accommodate claim was vexatious and groundless as it lacked an arguable basis either in law or in fact. Therefore, the Court exercises its discretion to award Defendants their attorneys' fees under 42 U.S.C. § 3613(c)(2) related to the partial motion for summary judgement.

### 2. Plaintiffs' Remaining Claims

On June 20, 2024, with leave of Court, Defendants filed their Second Motion for Summary Judgement on the remaining claims. *See* Docket No. 66. Despite the Court pointing out the deficiencies of the Complaint in the April 8, 2024 Order on Defendants' motion for partial summary judgement, Plaintiffs did not properly seek to amend their Complaint to clarify what additional claims they were asserting under the FHA. Instead, in their Response to Defendants' Second Motion for Summary Judgement, Plaintiffs attempted to "more clearly allege the claims pending", and, alternatively, sought permission to amend their Complaint.[3] *See* Docket No. 79, p. 31. The Court denied the request because it violated LCvR 7.1(b) and was unduly delayed and prejudicial to Defendants. *See* Docket No. 82, p. 5-7.

---

[3] Plaintiffs previously sought and were denied leave to amend their Complaint within their Response to Defendants' Motion for Leave to File a Second Motion for Summary Judgement because such request violated LCvR 7.1(b). *See* Docket Nos. 62 & 63.

In the August 7, 2024 Order, after denying Plaintiffs' claims related to vicarious liability and retaliation as improper because they were not alleged in the Complaint and were first raised in their Response to the second motion for summary judgement, the Court addressed the FHA harassment claim because both parties addressed it by implied consent. *Id*., pp. 8-10.  In the Order, the Court noted, *inter alia*, the following facts: in response to the March 24, 2021 telephone call from MFH to the apartment complex property manager, Frank Feiock emailed MFH and asked them to withdraw their request for accommodation; Frank Feiock then sent a letter critical of MFH; on the day the McNamees were moving out of the apartment, Frank Feiock approached James McNamee to ask about a purported cancer diagnosis and also took photographs of him as he was carrying items; Frank Feiock contacted the Department of Housing and Urban Development ("HUD"), as well as the Oklahoma Bar Association, to complain about MFH and file a formal grievance as to Plaintiffs' counsel; Frank Feiock sent at least three more emails to MFH over eight days, in which he complained, *inter alia*, of receiving no response to previous communications; and in one email, Frank Feiock used a pseudonym, "Jack Cory," in which he asked for Plaintiffs' counsel's direct email address because he believed she had discriminated against him, was biased, and had sent him a letter in which she threatened to either file a HUD complaint or a civil lawsuit.  *See* Docket No. 82, pp. 12-13.[4]  The Court first found that

---

[4] As noted in the August 7, 2024 Order, Defendants' Second Motion for Summary Judgment [Docket No. 66] and Reply [Docket No. 81] were also difficult to follow and parse.  Defendants' second motion for summary judgement contained only three and one-half pages of argument, while the remaining twelve pages contained the statement of undisputed facts.  Defendants' Reply, which violated LCvR 7.1(e) by exceeding ten pages in length, enumerated responses to Plaintiffs'

although MFH could have standing to assert an FHA harassment claim, it had not established standing in this case. *Id*., p. 14. The Order next concluded that although the McNamees had standing to raise an FHA harassment claim, the alleged conduct was not sufficiently severe and did not alter the condition of their housing to support such a claim. *Id*., p. 16.

While Plaintiffs' FHA harassment claim was weak and ultimately unsuccessful, the Court cannot say that such claim lacked any arguable basis either in law or in fact, or that the Plaintiffs continued to litigate after it clearly became so. As noted above, the fact that Plaintiffs ultimately lost their case "is not in itself sufficient justification for the assessment of fees. . . ." *Houston v. Norton*, 215 F.3d 1172, 1174 (10th Cir. 2000). Indeed, Mr. Feiock clearly engaged in what can charitably be described as aggressive and disquieting behavior towards both MFH and the McNamees. While the Court concluded his behavior was not sufficiently severe and did not alter a condition of the McNamees' housing to establish a harassment claim, pursuing such a claim was not vexatious or groundless. Therefore, the Court declines to award attorneys' fees under 42 U.S.C. § 3613(c)(2) for the FHA harassment claim.

**II.    Attorneys' Fees**

Because the Court concludes some of Defendants' attorneys' fees are recoverable, it must determine the reasonable amount of such fees. The starting point for a reasonable fee is the "lodestar" figure, which is "the number of hours expended on the litigation

---

additional facts, often without references to the record in this case. Furthermore, the Reply contained no additional argument other than unhelpful asides and snarky comments.

multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). This calculation of the "lodestar figure" typically yields a presumptively reasonable attorney's fee, though the "presumption may be overcome in those rare circumstances in which the lodestar does not adequately take into account a factor that may properly be considered in determining a reasonable fee." *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 554 (2010). *See also Two Old Hippies, LLC v. Catch the Bus, LLC*, 277 F.R.D. 448, 464-465 (D.N.M. 2011) (discussing factors supporting a lodestar award). In making these determinations, the Court is entitled to rely on its own knowledge and experience in determining an appropriate number of hours for the relief requested. *See Mares v. Credit Bureau of Raton*, 801 F.2d 1197, 1203 (10th Cir. 1986) ("A general reduction of hours claimed in order to achieve what the court determines to be a reasonable number is not an erroneous method, so long as there is sufficient reason for its use."); *Jones v. Eagle-North Hills Shopping Centre, L.P.*, 478 F. Supp. 2d 1321, 1326 (E.D. Okla. 2007) ("[T]he Court may consider a request for attorney fees in light of its own knowledge and experience with or without the aid of witnesses as to value or hours dedicated to litigation.").

Defendants seek a total of $8,529.00 in attorneys' fees for 51.1 hours of work attributable to their Motion for Partial Summary Judgement and Brief in Support, distributed as follows:[5]

---

[5] While it is possible, indeed perhaps likely, that time expended in preliminary and discovery matters may relate to the failure-to-accommodate claim, the Complaint's deficiencies and the lack of clarity in the time entries make it impossible for the Court to reasonably identify any additional time entries that are specifically related to the failure-to-accommodate/partial motion for summary judgment.

| Counsel | Total Hours | Rate | Compensation |
|---|---|---|---|
| Seth Caywood | 6.5 | $180 per hour | $1,170.00 |
| Dan Danz | 44.6 | $165 per hour | $7,359.00 |
| Cindy Carty | 0.0 | $75 per hour | $0.00 |

Plaintiffs do not challenge these rates or hours, but the Court addresses each as part of its duty to assess a reasonable fee. *See Case v. Unified Sch. Dist. No. 233, Johnson Cnty., Kan.*, 157 F.3d 1243, 1249 (10th Cir. 1998) ("'[T]he fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates.'") (quoting *Mares v. Credit Bureau of Raton,* 801 F.2d 1197, 1201 (10th Cir. 1986) (quoting *Hensley v. Eckerhart,* 461 U.S. 424, 437 (1983)).

1. **Hourly Rate**

Defendants claim its attorneys expended 51.1 hours of work on the relevant motion, at rates ranging from $165/hour to $180/hour, as set forth above. Given Plaintiffs' lack of objection and the Court's knowledge of customary hourly rates in Tulsa, Oklahoma, *see Chatman v. Buller*, 2013 WL 5729603, at *2 n.3 (E.D. Okla.) (finding Tulsa, Oklahoma part of the "relevant area for purposes of determining a reasonable rate," due to its proximity to the Eastern District of Oklahoma and the number of Tulsa-based attorneys who practice in this Court), as well as knowledge of the local practice in general, the Court has no trouble concluding that $180/hour for Mr. Caywood and $165/hour for Mr. Danz are reasonable hourly rates for the attorneys in this case. *See Jones*, 478 F.Supp.2d at 1326

(noting that "the Court may consider a request for attorney fees in light of its own knowledge and experience with or without the aid of witnesses as to value or hours dedicated to litigation.").

### 2. Hours Billed

Turning to the number of hours in the billing record, Defendants' attorneys seek a collective 51.1 billing hours related to the motion for partial summary judgement. As discussed more fully below, the Court finds that a limited reduction of the hours billed is appropriate as to Mr. Danz and Mr. Caywood.

The reasonableness component as to billing judgment requires the Court to consider "'whether the attorney's hours were necessary under the circumstances' and 'approaches this reasonableness inquiry much as a senior partner in a private law firm would review the reports of subordinate attorneys when billing clients.'" *Read v. Oklahoma Flintrock Prod., LLP*, 2023 WL 3510494, at *3 (N.D. Okla. May 17, 2023) (quoting *Robinson v. City of Edmond*, 160 F.3d 1275, 1281 (10th Cir. 1998) (cleaned up)).

*Mr. Caywood*

Mr. Caywood billed 6.5 hours for tasks related primarily to drafting the undisputed facts section for the partial motion for summary judgment, reviewing and finalizing such motion, reviewing Plaintiffs' response to the motion, and reviewing the Court's April 8, 2024 Order. The Court finds these entries were necessary and reasonable under the circumstances of the case. Mr. Caywood, however, also billed 3.8 hours on April 26, 2024, to further analyze the Court's April 8 Order. Without additional information other than what is in the time entry, the Court cannot evaluate this entry for reasonableness. The

Court therefore finds the 3.8 hour entry on April 26, 2024 is not necessary and reasonable and should not be allowed. This leaves a total of 2.2 hours for Mr. Caywood. *See Case v. Unified Sch. Dist. No. 233, Johnson County, Kan.*, 157 F.3d 1243, 1250 (10th Cir. 1998) ("'A general reduction of hours claimed in order to achieve what the court determines to be a reasonable number is not an erroneous method, so long as there is sufficient reason for its use.'") (quoting *Mares*, 801 F.2d at 1203); *Jones*, 478 F. Supp. 2d at 1326 ("[T]he Court may consider a request for attorney fees in light of its own knowledge and experience with or without the aid of witnesses as to value or hours dedicated to litigation."). *See also Pierce v. Atl. Specialty Ins. Co.*, 2017 WL 3996216, at *4 (D.N.M. Sept. 8, 2017) ("[T]he Court will further reduce Ms. Weisman's remaining 68.9 hours by 25 hours for excessive billing in drafting emails and preparing for conference calls and for administrative tasks."). *Cf. Fox v. Pittsburg State University*, 258 F. Supp. 3d 1243, 1262 (D. Kan. 2017) (The Court was "satisfied Plaintiff's counsel exercised a proper amount of billing judgment" where counsel had reduced nearly 10% of their hours, deleting "time spent for tasks like reviewing the EEOC investigation, emails for purposes of scheduling or administrative matters, reviewing the Court's orders on matters like summary judgment, and drafting motions for extension of time.").

*Mr. Danz*

Mr. Danz billed a total of 44.6 hours for tasks related to the partial motion for summary judgment. Mr. Danz's tasks primarily involved researching and drafting the motion, analyzing Plaintiffs' response, and researching and drafting the reply brief. Additionally, Mr. Danz billed significant time on January 3, 2024 for reviewing and

13

selecting medical records of Mr. Feiock for the reply, although only three pages of VA records were ultimately attached to the reply brief. These entries total 7.6 hours. Additionally, Mr. Danz billed 2.7 hours for analyzing the April 8, 2024 Order, which was a duplicate task also billed by Mr. Caywood. As a result, the Court finds these time entries totaling 10.3 hours were excessive and should be reduced. Therefore, Mr. Danz's total allowed time is 34.3 hours for a total of $5,659.50.

3. **Summary**

In summary, the Court finds that attorneys' fees should be awarded as set forth below:

| Counsel | Total Hours | Rate | Compensation |
|---|---|---|---|
| Seth Caywood | 2.2 | $180 per hour | $396.00 |
| Dan Danz | 34.3 | $165 per hour | $5,659.50 |
| Cindy Karty | 0.0 | $75 per hour | $0.00 |
| Totals | 36.5 |  | $6,055.50 |

**CONCLUSION**

Accordingly, Defendants' Motion for the Recovery of Legal Fees and Brief in Support [Docket No. 85] is GRANTED to the extent Defendants are entitled to recover $6,055.50 in attorneys' fees pursuant to 42 U.S.C. § 3613(c)(2) related to Defendants' Motion for Partial Summary Judgement and Brief in Support as set forth herein, but

otherwise DENIED. The Plaintiffs are hereby ORDERED to pay Defendants $6,055.50 in attorneys' fees.

IT IS SO ORDERED this 4th day of November, 2024.

_____
**GERALD L. JACKSON
UNITED STATES MAGISTRATE JUDGE**